Argued July 21, decided August 3, rehearing denied October 5, 1909.

## STATE *v.* DALEY.

[103 Pac. 502; 104 Pac. 1.]

CRIMINAL LAW—INSTRUCTIONS—OBLIGATION OF JURY.

1. Under Section 16, Article I, Constitution of Oregon, providing that in criminal cases the jury shall determine the law and the facts under the direction of the court as to the law, the jury have not the moral right to disregard the directions of the court as to the law, and in determining the guilt or innocence of accused they should, as required by Section 1410, B. & C. Comp., receive the law from the court, though they have the power to disregard the instructions and acquit accused, who cannot, because of Section 12, be again placed in jeopardy for the same offense.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—PUNISHMENT.

2. The court, in charging that the jury in finding accused not guilty on the ground of insanity should state that fact in the verdict, properly refused to charge, in the language of Section 1424, B. & C. Comp., that the court on such a verdict must commit accused to a lunatic asylum, where it deems his being at large dangerous to the public safety; whether accused should be so confined being for the court alone.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—PUNISHMENT.

3. Where the jury are not authorized by statute to prescribe the punishment, it is not error to refuse to instruct what the penalty may be if accused is found guilty as charged or of a lesser offense included in the indictment.

CRIMINAL LAW—APPEAL—EXCEPTIONS BELOW.

4. Any error of the court in failing in its duty, under Section 16, Article I, Constitution of Oregon, to instruct, without request, on all questions of law arising in the case, is unavailable on appeal, unless exception was reserved.

(MR. JUSTICE KING dissenting.)

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Harry Daley was indicted for the crime of murder in the first degree and by the verdict of a jury was found guilty as charged in the indictment. From the judgment of death following such conviction, he appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. John H. Stevenson* and *Mr. Lester W. Humphreys,* with an oral argument by *Mr. Stevenson.*

For the state there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General; *Mr. George J. Cameron,* District Attorney, and *Mr. J. H. Page,* Deputy District Attorney, with an oral argument by *Mr. Page.*

Opinion by MR. CHIEF JUSTICE MOORE.

The defendant, Harry Daley, was convicted of the crime of murder in the first degree, alleged to have been committed by killing Harry Kenny purposely and with deliberate and premeditated malice. He appeals from the sentence of death which resulted; his counsel contending that an error was committed in refusing to instruct the jury as requested, to which denial an exception was taken.

1. Evidence was offered at the trial tending to show that by reason of mental incapacity the defendant was not responsible for the killing, and, based thereon, his counsel requested the court to charge the jury as follows:

"The defense of insanity having been interposed by the defendant, in this case, you are instructed that if you find him not guilty on that ground, to state the fact in your verdict (and the court must thereupon, if it deems his being at large dangerous to the public peace or safety, order him to be committed to any lunatic asylum authorized by the state to receive and keep such persons, until he becomes sane, or be otherwise discharged therefrom by authority of law)."

That part of the charge so requested, which is included within the parentheses as here indicated, was refused;

but the remainder of the instruction was given. The clause so excluded is copied from a part of the statute directing the manner of caring for a person considered dangerous, who, by reason of insanity, has been acquitted of the commission of a crime: Section 1424, B. & C. Comp. The defendant's counsel, invoking a provision of the organic law of this state, to wit: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts, under the direction of the court, as to the law" (Section 16, Article I, Constitution of Oregon), argue that the jury should have been informed that a verdict of not guilty, by reason of insanity, did not necessarily discharge the accused, but that, if the court had considered him dangerous to the public peace or safety, he could have been confined in a lunatic asylum, thereby preventing further injury, and that the failure so to charge did not allay the fear which the jury entertained that the defendant might kill some other person, and induced the verdict which was returned.

The doctrine that in criminal cases the jury should have the right to determine the law and the facts probably originated in the American Colonies prior to the Revolution, and was a protest against what was considered to have been the arbitrary rulings of the judges in the trial of causes involving freedom of speech and of the press: *Williams* v. *State,* 32 Miss. 389, 396 (66 Am. Dec. 615). A text-writer, speaking upon this subject, observes:

"In many of the states the arbitrary temper of the colonial judges, holding office directly from the crown, had made the independence of the jury in law, as well as in fact, of much popular importance. Thus, John Adams, in his Diary for February 12, 1771, in a passage which is probably either an extract from or a memorandum of a speech before the colonial legislature, urges that in the then state of things public policy demanded that not only in criminal, but in civil cases, juries should be at liberty to take the law in their own hands": Wharton's Crim.

Pl. & Pr. (8 ed.), § 806.   To the same effect see *Sparf &
Hansen* v. *United States,* 156 U. S. 51, 143 (15 Sup. Ct.
273: 39 L. Ed. 343).

The earliest recorded assertion of this legal principle
which we have found appears in the report of the trial
of John Peter Zenger for libel, before JAMES DE LANCY,
Chief Justice, in the province of New York, August 4,
1735 (17 Howell's St. Tr. 675, 706), as follows:

Mr. Chief Justice: "All words are libelous,. or not, as
they are understood.   Those who are to judge of the
words must judge whether they are scandalous or ironi-
cal, tend to the breach of the peace, or are seditious.
There can be no doubt of it."   Mr. Hamilton, attorney
for the defendant, said: "I thank your honor.   I am glad
to find the court of this opinion.   Then it follows that
those 12 men (the jurors) must understand the words
in the information to be scandalous; that is to say, false;
for I think it is not pretended they are of the ironical
sort; and when they understand the words to be so, they
will say we are guilty of publishing a false libel and not
otherwise."   Mr. Chief Justice: "No, Mr. Hamilton, the
jury may find that Mr. Zenger printed and published
those papers, and leave it to the court to judge whether
they are libelous.   You know this is very common.   It is
in the nature of a special verdict, where the jury leave
the matter of law to the court."   Mr. Hamilton: "I know,
may it please your honor, the jury may do so; but I do
likewise know that they may do otherwise.   I know they
have the right, beyond all dispute, to determine both the
law and the fact; and where they do not doubt of the
law, they ought to do so."

In the case of *Rex* v. *Shipley,* Dean of St. Asaph, 21
Howell's St. Tr. 847, 923, the defendant was tried at the
Assizes of Shrewsbury, August 6, 1784, for the publi-
cation of a criminal libel.   His attorney, Thomas Erskine,
afterwards Lord Chancellor of Great Britain, referring
to the doctrine under consideration, says: "A jury are no
more bound to return a special verdict in cases of libel
than upon other trials criminal and civil where law is
mixed with fact.   They are to find generally upon both,

receiving, as they constantly do in every court at Westminster, the opinion of the judge, both on the evidence and the law." The following verdict was returned in that case: "Guilty of publishing, but whether a libel or not, the jury do not find." In discharging a rule to show cause why there should not be a new trial, Lord MANSFIELD, at page 1034 of the volume referred to, replying to the point contended for by the defendant's counsel, remarked: "Circumstances which amount to a lawful excuse or a justification are proper upon the trial, and can only be used there. Upon every such defense set up of a lawful excuse or justification there necessarily arise two questions, one of law, the other of fact; the first to be decided by the court, the second by the jury." In a note to that case, appearing at page 1039, the following statement is made:

"Although the court was unanimous in discharging the rule, Mr. Justice WILLES, in delivering his opinion, sanctioned by his authority Mr. Erskine's argument that upon a plea of not guilty, or upon the general issue on an indictment or information for a libel, the jury had not only the power, but a constitutional right, to examine, if they thought fit, the criminality or innocence of the paper charged as a libel; declaring it to be his settled opinion, that notwithstanding the production of sufficient proof of the publication, the jury might upon such examination, acquit the defendant generally, though in opposition to the directions of the judge, without rendering themselves liable either to attaint, fine or imprisonment, and that such verdict of deliverance could in no way be set aside by the court."

The doctrine thus asserted was generally recognized in this country for some time after the adoption of the Federal Constitution: Wharton's Crim. Pl. & Pr. (8 ed.) § 806. The fear that a judge, elected by popular vote, might encroach upon the rights of personal liberty in the trial of criminal actions has been very much dispelled, except possibly in causes involving political questions, and at the present time, in the absence of a constitutional or

statutory provision making the jury in a criminal action
the judges of the law and the facts, the doctrine referred
to rarely obtains. As tending to show the change of judi-
cial utterance upon this question, attention will be called
to a few decisions. Thus, in *Com.* v. *Knapp,* 10 Pick.
(Mass.) 477, 496 (20 Am. Dec. 534), and in *Com.* v.
*Kneeland,* 20 Pick. (Mass) 206, 222, the doctrine was
recognized by the Supreme Court of Massachusetts, but
in later decisions by that tribunal it was rejected: *Com.*
v. *Porter,* 10 Metc. (Mass.) 263; *Com* v. *Anthes,* 5 Gray
(Mass.) 185. In *Kane v. Com.* 89 Pa. 522 (33 Am. Rep.
787) it was admitted that the jury had the right to deter-
mine the law and the facts in the trial of a criminal
cause; but thereafter that ruling was modified: *Nicholson*
v. *Com.* 96 Pa. 503; *Com.* v. *McManus,* 143 Pa. 64 (21
Atl. 1018; 22 Atl. 761; 14 L. R. A. 89). In *State* v. *Cro-
teau,* 23 Vt. 14 (54 Am. Dec. 90) a majority of the court
held that the doctrine was applicable; but in *State* v.
*Burpee,* 65 Vt. 1 ( 25 Atl. 964; 19 L. R. A. 145; 36 Am.
St. Rep. 775) the former decision was expressly over-
ruled. In *Sparf & Hansen* v. *United States,* 156 U. S. 51,
102 (51 Sup. Ct. 273: 39 L. Ed. 343), Mr. Justice HAR-
LAN, in a masterly manner discusses this question, and
says: "But upon principle, where the matter is not con-
trolled by express constitutional or statutory provisions,
it cannot be regarded as the right of counsel to dispute
before the jury the law as declared by the court."

The constitution of Indiana contains a provision, as
follows: "In all criminal cases whatever the jury shall
have the right to determine the law and the facts." In
construing that clause it was held that the court's refusal
to permit counsel to argue to the jury, the constitutional-
ity of a statute was erroneous: *Lynch* v. *State,* 9 Ind. 541.
So, too, in *Williams* v. *State,* 10 Ind. 503, the jury was
instructed as follows: "You are the exclusive judges of
the evidence, and may determine the law; but it is as

much your duty to believe the law to be as charged to you by the court as it is your sworn duty to determine the evidence." And it was ruled that an error was committed, since the jury were the exclusive judges of the law and the evidence. In that case Mr. Justice HANNA writes a strong dissenting opinion. In *McDonald* v. *State,* 63 Ind. 544, it was decided that under the constitution of Indiana the jury in a criminal case are the exclusive judges of both the law and the evidence, and that the duty of the court in giving them instructions was merely advisory. In *Anderson* v. *State,* 104 Ind. 467 (4 N. E. 63: 5 N. E. 711), however, it was determined that an instruction which informed the jury that, "even if all the facts alleged in the indictment are established beyond a reasonable doubt, you have still the right to determine whether or not such facts, when so established, constitute a public offense under the laws of the state, and, if you determine that they do not, you have the right to acquit the defendant," was properly refused as implying an unnecessarily extreme construction of the constitutional right of a jury in a criminal case.·

In *Franklin* v. *State,* 12 Md. 236, in construing a clause of the organic act of Maryland, as follows: "In the trial of all criminal cases the jury shall be the judges of law as well as fact," it was stated that the constitutional provision was merely declaratory of a pre-existing law regulating the powers of the court and jury; and it was held that the jury had no right to determine the constitutionality of an act of the assembly, and that the trial court properly prevented counsel from arguing that question before the jury.

A statute of Illinois contained the following enactment: "Juries in all criminal cases shall be judges of the law and the fact." In construing that clause in *Schnier* v. *People,* 23 Ill. 17, it was held that the jury, in a trial for murder, were the judges of the law and the fact, and

were not bound by the opinion of the court. See also to the same effect: *Fisher* v. *People,* 23 Ill. 283; *Falk* v. *People,* 42 Ill. 331. In *Mullinix* v. *People,* 76 Ill. 211, however, the following part of a charge having been given as requested, to wit: "The court instructs the jury for the defense that the jury are the sole judges of the law as well as the facts in the case"—there was added the following qualification: "But the jury are further instructed that it is the duty of the jury to accept and act upon the law, as laid down to you by the court, unless you can say, upon your oaths, that you are better judges of the law than the court; and if you can say, upon your oaths, that you are better judges of the law than the court, then you are at liberty to so act." And it was held that the modification was not erroneous, but eminently just and proper.

It will be borne in mind that the clause of our constitution under consideration confers upon the jury in all criminal cases the right to determine the law and the facts, "under the direction of the court as to the law," thereby restricting the authority of the jury to a much greater extent than is prescribed by the organic law of Indiana, or of Maryland, or by the statute of Illinois, to which notice has been directed. Notwithstanding the restricted application of the doctrine under consideration the jury in the trial of a criminal action in this state have the power to disregard the instructions of a court and to find a defendant not guilty. A verdict of that kind cannot be set aside, and necessarily discharges the defendant whose liberation results from the application of another clause of our organic act, to wit: "No person shall be put in jeopardy twice for the same offense": Section 12, Article I, Constitution of Oregon. Though such power of the jury is recognized, their right, in the trial of a criminal action, to ignore the charge of the court, may well be doubted, for if an instruction misstates the law appli-

cable to the facts involved, and the defendant is found guilty, the error which has been committed can be corrected on appeal. If, however, the jury asuming to be the judges of the law, contrary to the direction of the court, return a verdict of not guilty in a criminal action, the public necessarily sustains an injury which cannot be legally corrected. It is to the credit of the jury system that such mistrials seldom occur, except in actions involving the commission of minor offenses, in which quite a public sentiment seems to be opposed to the strict enforcement of municipal or legislative enactments.

2. The instructions given at the trial of a criminal action relating to the questions of law involved ought to bind the consciences of the jurors, prompting them to return a just verdict, though a defendant might be found guilty; and, while the jurors possess the power referred to, they have not the moral right to disregard the directions of the court as to the law. In the trial of a criminal case, the jury, in determining the guilt or innocence of the party accused, which consists of a mixed question of law and fact, should always be governed by the court's direction as to the law, as expressly indicated by our constitution: Section 1410, B. & C. Comp; *State* v. *Reed*, 52 Or. 377 (97 Pac. 627) ; *State* v. *Walton*, 53 Or. 557 (99 Pac. 431). An examination of the instruction requested will show that the language employed only indirectly involved the question of the guilt or innocence of the defendant, so far as that deduction might be influenced by the sentence which would be pronounced against him. If the jury concluded that in consequence of the defendant's mental incapacity he was not responsible for the killing, they should have returned a verdict of not guilty by reason of insanity. Whether or not the defendant should be confined in a lunatic asylum was not a matter for the jury to consider. The determination of that question devolved exclusively upon the court: Section 1424, B. & C. Comp.

3. Where the jury are not authorized by statute to prescribe the punishment to be inflicted for the commission of a crime, no error is committed in refusing to instruct them what the penalty might be if the defendant is found guilty as charged, or if convicted of a lesser offense included within the greater, as specified in the indictment: 11 Enc. Pl. & Pr. 208; Blashfield's Instructions to Jurors, § 186; *Russell* v. *State,* 57 Ga. 421; *Wood* v. *People,* 1 Hun (N. Y.) 381; *People* v. *Ryan,* 55 Hun (N. Y.) 214 (8 N. Y. Supp. 241). A different conclusion was reached in *People* v. *Cassiano,* 30 Hun (N. Y.) 388, a case relied upon by defendant's counsel. In *Ford* v. *State,* 46 Neb. 390, 396 (64 N. W. 1082), in referring to the preceding decision, Mr. Chief Justice NORVAL says: "The case decided by the New York court, already cited, sustains the contention of counsel for plaintiff in error; but it is not a well-considered opinion, nor is any authority cited in that state, or elsewhere, to support the doctrine."

No error was committed in refusing to give the instruction requested, and the judgment is affirmed.

AFFIRMED.

Decided October 5, 1909.

## ON PETITION FOR REHEARING.

[104 Pac. 1.]

Opinion by MR. CHIEF JUSTICE MOORE.

4. In a petition for a rehearing herein attention is called to the case of *State* v. *Cody,* 18 Or. 506, 521 (23 Pac. 891; 24 Pac. 895), where the doctrine was proclaimed that under the organic law of this state (Section 16, Article I, Constitution of Oregon) it was the duty of a court, without a request therefor, to instruct the jury as to all questions of law that might arise at the trial of a criminal action, and that a failure so to charge con-

stituted reversible error, though no exception to the alleged neglect was reserved. That part of the opinion relied upon was expressly overruled in the case of *State* v. *Foot You,* 24 Or. 61, 70 (32 Pac. 1031: 33 Pac. 537), and the legal principle last announced had been subsequently followed: *State* v. *Smith,* 47 Or. 485, 490 (83 Pac. 865) ; *State* v. *Reyner,* 50 Or. 224, 232 (91 Pac. 301).

Believing that no error was committed in the trial of this cause, the petition for a re-hearing is denied.

AFFIRMED: REHEARING DENIED.

MR. JUSTICE KING delivered the following dissenting opinion on the petition for rehearing:

Defendant was charged, tried and convicted of murder in the first degree. At the trial his counsel interposed the defense of insanity, pursuant to which the court was requested to instruct the jury that: "The defense of insanity having been interposed by the defendant in this case, you are instructed that if you find him not guilty on that ground, to state the fact in your verdict, and the court must thereupon, if it deems his being at large dangerous to the public peace or safety, order him to be committed to any lunatic asylum authorized by the state to receive and keep such persons until he becomes sane, or be otherwise dicharged therefrom, by authority of law." All of that portion of the requested instruction after the word "verdict" was refused by the trial court. This refusal is assigned as error, and constitutes the sole question presented. I think it clear from the instruction requested that the point involved relates solely to the right of the jury to know the full effect under the law of their verdict in the event the defense of insanity should be sustained, and not the question, as considered and determined by the majority, whether the jury should know the penalty, if any, under such circumstances. As instructed, they received but a part of the law respecting the defense of insanity applicable to such cases. They

had no means of knowing whether the accused, if found a maniac, should be turned loose upon the community with the probability of his again committing a like crime, or whether it was within the power of the court to consider the verdict, and be governed accordingly. It was not asked that the court indicate what course it would pursue, but what course, under the law, could be taken.

In *State* v. *Cody,* 18 Or. 506, 521 (23 Pac. 891; 24 Pac. 895) the court had under consideration the giving of instructions not requested, while here the instruction not given was demanded by the defendant and the language to have been intended by way of argument only. quoted from *State* v. *Cody* in the petition appears The defense of insanity under Section 1393, B. & C. Comp., must be proved beyond a reasonable doubt, and, when relied upon, must be considered in connection with Section 1424 of the Code, which provides the course to be pursued in such cases. Section 16, Article I, of the Constitution clearly contemplates that the jury should be fully instructed as to the law, and as to the practice whether this was intended to be imperative only in the event it is requested by the defense under the record in this case becomes unimportant. It needs no argument to demonstrate that where a man has committed what appears to the jury to be a deliberate murder, if they should believe a verdict of not guilty on account of insanity would turn him at large upon the public it would materially affect their determination of the cause. The court should therefore inform the jury that such a verdict may not necessarily so result, and that under the law it is a matter for the court to determine whether his running at large would endanger public peace and safety. This would in no sense be stating to the jury what the penalty would be, or what the court would do under such circumstances; nor is such the import of the requested instruction. Since the law

requires the insanity to be established beyond a reasonable doubt, unless the jury is fully enlightened as to the law bearing on the subject, this defense, however insane may be the accused, becomes indirectly eliminated. Jurors are not presumed to know the law governing the issues presented. If they were, instructions would probably not be required. I am of the opinion that the constitution intended that the jury should be sufficiently apprised of every phase of the law governing the case as would enable them fully to determine the course they should pursue under the evidence adduced at the trial. This was not done in this case.

Believing that the defendant has been deprived of his constitutional and statutory rights in this respect, I therefore dissent from the conclusions announced by the majority, and think the judgment of the court below should be reversed, and a new trial ordered.