Argued June 3, affirmed June 22, rehearing denied September 11, second petition for rehearing denied September 21, 1926.

## STATE *v.* ELLSWORTH KELLEY AND JAMES WILLOS.

(247 Pac. 146.)

Criminal Law.

1. In absence of objection at trial, defendant cannot raise exceptions to charge for first time in Supreme Court.

Criminal Law.

2. In prosecution for murder committed as defendants were attempting a prison break, commitments under which they had been held *held* properly admitted in evidence.

Criminal Law—In Homicide Case, Evidence of Admissions by Defendants to District Attorney Held not Improperly Admitted (§ 1781, Or. L.).

3. In prosecution for murder, admission of testimony of stenographer concerning statements made by defendants to district attorney *held* not error, notwithstanding noncompliance with Section 1781, Or. L., requiring magistrate to inform defendant of his right to make statement.

Criminal Law.

4. Admissibility of any inculpatory statement of defendants is question of law in first instance for trial court, who will be presumed to have required proper showing.

Witnesses.

5. A defendant called as a witness by his own counsel need not be warned by a court or prosecution of his right to refuse to testify.

Criminal Law—In Prosecution for Murder, Knife Found in Vicinity of Defendants' Hiding Place Held Properly Admitted.

6. In prosecution of three defendants for murder committed in course of prison break, where there was evidence that one defendant was armed with a knife at the time of the escape, knife found in vicinity of defendants' hiding place was properly admitted.

Criminal Law—In Prosecution for Murder in Course of Prison Break, Evidence With Reference to Report That Shots were Fired into "Bull-pen" Held Properly Stricken Out on Motion of District Attorney.

7. In prosecution for murder committed in course of prison break, question asked one defendant as to whether there was a current report among prisoners that shots had been fired into the "bull-pen" by the guards, and an affirmative answer thereto, *held* properly stricken out on motion of district attorney.

Criminal Law.

8. Relevancy of cross-examination of defendants *held* not determinable, in absence of any report on appeal of the direct examination.

Witnesses.

9. Defendants as witnesses are subject to cross-examination as other witnesses.

Criminal Law—Offer of Proof Respecting Effect of Confinement of Prisoners in "Bull-pen" Properly Excluded on Trial for Homicide in Prison Break.

10. In prosecution for murder committed in course of prison break, offer of proof affecting warden's knowledge of the effect of

9. See 28 R. C. L. 444.

confinement in "bull-pen" on inmates' mentality, *held* properly excluded, when it was not responsive to any interrogatory propounded, and witness had disclaimed knowledge of effect on defendant.

**Convicts—That Defendants were Under Sentence for Other Offenses Held not to Deprive Court of Jurisdiction to Sentence Them to Death for Murder in Course of Prison Break (§ 1576, Or. L.).**

11. That defendants were under sentence of imprisonment for other offenses *held* not to deprive trial court of jurisdiction to sentence them to death for murder committed in course of prison break, notwithstanding Section 1576, Or. L.

**Homicide—That Defendants Became Apprehensive of Death or Great Bodily Harm by Reason of Their Imprisonment Held not to Justify Attempt to Escape and Homicide in Course Thereof as in Self-defense.**

12. That defendants' solitary confinement in prison had tendency to impair their health and to render them apprehensive of death or great bodily harm *held* not to justify attempt to escape or murder in the course thereof as in self-defense.

**Homicide.**

13. An aggressor cannot successfully invoke right of self-defense unless before killing he in good faith withdrew from combat in manner to show his adversary his intention to desist.

**Homicide.**

14. Imminence of danger, to justify or excuse taking of human life, must be or appear to be impending and imminent.

**Criminal Law.**

15. In absence of contrary showing, Supreme Court will presume that Section 868, Or. L., requiring instruction to consider accomplice's testimony and oral admissions with caution, was complied with.

**Homicide—Instruction Affecting Jury's Right to Qualify Verdict of Guilty of Murder Held Properly Refused, as Inviting Violation of Oath (§ 131, Or. L.).**

16. Instruction on jury's right to qualify verdict of guilty of murder in first degree by recommending life imprisonment *held* properly refused, as inviting jury to enter realm of speculation in violation of their oath, under Section 131, Or. L.

---

13. General doctrine as to self-defense set up by accused who began the conflict, see notes in 45 L. R. A. 687 et seq.; L. R. A. 1915F, 656. See, also, 13 R. C. L. 831.

14. Standpoint of determination as to danger and necessity to kill in self-defense, see note in 3 L. R. A. (N. S.) 535. See, also, 13 R. C. L. 817.

Homicide.

17. Indictment for murder, charging that defendants on a certain day "killed" deceased, *held* sufficient without statement that he died within a year and a day.

Convicts, 13 C. J., p. 919, n. 20, 22, p. 920, n. 23.
Criminal Law, 16 C. J., p. 329, n. 85, p. 618, n. 34, p. 619, n. 36, p. 622, n. 12, p. 926, n. 67, p. 1043, n. 37, p. 1045, n. 39; 17 C. J., p. 64, n. 3, p. 141, n. 70, 71, p. 169, n. 8, p. 170, n. 30, p. 171, n. 31, p. 173, n. 48, p. 182, n. 47, p. 222, n. 25, p. 223, n. 44, p. 224, n. 47.
Homicide, 30 C. J., p. 45, n. 78, p. 46, n. 79, 80, 81, p. 53, n. 93, p. 57, n. 66, p. 58, n. 67, 68, p. 91, n. 89, p. 107, n. 87, p. 148, n. 90, p. 193, n. 53.
Witnesses, 40 Cyc., p. 2510, n. 29, p. 2547, n. 86, p. 2553, n. 28, 32, p. 2558, n. 63, p. 2616, n. 20.

From Marion: PERCY R. KELLY, Judge.

In Banc.

AFFIRMED. REHEARING DENIED.

For appellants there was a brief and oral arguments by *Mr. Will R. King* and *Mr. Martin L. Pipes.*

For respondent there was a brief over the name of *Mr. Lyle J. Page,* with oral arguments by *Mr. John H. Carson,* District Attorney, and *Mr. Allan G. Carson.*

BURNETT, J.—The defendants Kelley and Willos, together with one Tom Murray, were jointly indicted by the grand jury of Marion County in an indictment the charging part of which is as follows:

"The said Tom Murray, Ellsworth Kelley and James Willos on the twelfth day of August, A. D. 1925, in the County of Marion and State of Oregon then and there being, did then and there unlawfully, feloniously, purposely and of deliberate and premeditated malice kill one John Sweeney by shooting him, the said John Sweeney, with a pistol, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Having been convicted of murder in the first degree without recommendation by the jury, they were sentenced to death and have appealed.

1. In the bill of exceptions presented by them, there is no objection to the charge of the court to the jury at the trial. We are urged to consider some criticisms made by industrious counsel against some features of the charge. In *State* v. *Cody,* 18 Or. 506, (23 Pac. 891, 24 Pac. 895), it was held that the defendant could raise exceptions to the charge in this court for the first time without having made any objections at the trial, but in *State* v. *Foot You,* 24 Or. 61 (32 Pac. 1031, 33 Pac. 537), this doctrine was distinctly repudiated and *State* v. *Cody* was expressly overruled on that point. The overruling of *State* v. *Cody* was followed also in *State* v. *Daley,* 54 Or. 514 (103 Pac. 502, 104 Pac. 1), and *State* v. *Brinkley,* 55 Or. 134 (104 Pac. 893, 105 Pac. 708). A leading case is *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. 309), which holds that:

" * * it is not error simply, but error legally excepted to that constitutes ground for reversal."

That case is firmly implanted in our jurisprudence as a guiding principle and has never been disturbed from that date to this. We must, therefore, decline to consider exceptions not embodied in the bill.

Of the twenty-eight assignments of error mentioned in the brief of the defendants, Numbers One, Two, Four, Five and Eleven are not in the bill of exceptions. It is assigned also as error in Number Three that the court was wrong in allowing Dr. Prime to testify about wounds on the body of James Milton Holman, and in Numbers Eight and Nine, the defendants complain about allowing the witness Dalrymple to testify about a note-book of one Bert (Oregon) Jones, but there is not enough in the bill of exceptions in the way of recitation of testimony to explain these assignments.

2. In assignments Numbers Six and Seven the defendants complain about admitting in evidence the commitment of themselves and the above-named Jones to the penitentiary. These documents were admissible to explain the situation and show that all of them were convicts and to be considered with other evidence tending to show that they were in the act of escaping from confinement when the homicide was committed.

3, 4. In assignments Numbers Ten and Twelve, the defendants claim that the court was wrong in admitting the testimony of a stenographer about statements of the defendants made to the district attorney without first having shown that defendants were not coerced, but made the declarations voluntarily. A careful reading of the subject matter involved discloses no confession of guilt on the part of the defendants. On the contrary, they denied any participation in the killing of Sweeney or any attempt to kill him. The defendants contend that it must appear that confessions were made voluntarily and without any fear or compulsion exercised upon the defendants making them. Granting for the moment that the statements reported by the stenographer were indeed confessions or distinct admissions of guilt, the admissibility of any inculpatory statement of defendants is a question of law in the first instance for the court and, in the absence of any showing on that subject in the bill, we must presume that the court did its duty and required such a showing to be made. There is no challenge in the bill to the sufficiency of any showing. Section 1781, Or. L., referred to by the defendants in their brief, refers to a judicial examination of a charge before a magistrate and, in that instance, it is made the duty of

the magistrate to inform the defendant that it is his right to make a statement in relation to the charge against him. This section, however, does not refer to any case such as that disclosed in the evidence where the defendants are said to have had conversation with the district attorney concerning their presence and actions at the time Sweeney was killed. We have carefully considered the citations of counsel respecting the necessity of confessions being voluntary, particularly the case of *Bram* v. *United States,* 168 U. S. 532 (42 L. Ed. 568, 18 Sup. Ct. Rep. 183, see, also, Rose's U. S. Notes). That precedent was discussed in *State* v. *Morris,* 83 Or. 429 (163 Pac. 567), and was not deemed controlling although the case for coercion of the defendant was stronger than in this instance.

5. A kindred question is raised in the Assignment of Error Number Thirteen, where the defendant Willos was called as a witness without having been informed that it was unnecessary for him to give testimony regarding himself, but in this instance, as disclosed by the bill, he was called by his own counsel as a witness in his own behalf. Under such circumstances there is no requirement of law that the court or the prosecution shall interpose and warn him about his legal rights.

6. It is said a mistake was made by the court in admitting a knife in evidence. The testimony recited in the bill discloses that the codefendant Murray was armed with a knife at the time the defendants escaped from the penitentiary and that this knife was found in the vicinity where the defendants went into hiding immediately after their escape. There was no error in admitting it in evidence.

7. As a fifteenth objection, error is assigned with reference to shots having been fired into the "bull-pen," a designation of a certain place of confinement at the penitentiary. The bill discloses that the defendant Murray was called as a witness on behalf of the defendants and on direct examination was asked if it was a current report among the prisoners that shots were fired into the "bull-pen" by the guards and he answered "Yes." On motion of the district attorney, the answer was stricken out. There was no error in this for it was not pretended that it was part of the *res gestae* or that it was any more than a current report among the convicts.

8. In the seventeenth and eighteenth assignments the defendants object to cross-examination of themselves while they were on the witness-stand. Kelley was asked if he had got into trouble in Iowa and a like question was asked of Willos about his alleged conviction of crime in Oklahoma. Whether or not this was relevant cross-examination we are unable to discern in the absence of a report of what the direct examination was.

In *Raffel* v. *United States of America,* 70 L. Ed. 622 (46 Sup. Ct. Rep. 566), decided by the Supreme Court of the United States June 1, 1926, it is said:

"The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. *Reagan* v. *United States,* 157 U. S. 301 (39 L. Ed. 709, 15 Sup. Ct. Rep. 610); *Fitzpatrick* v. *United States,* 178 U. S. 304 (44 L. Ed. 1078, 20 Sup. Ct. Rep. 944); *Powers* v. *United States,* 223 U. S. 303 (56 L. Ed. 448, 32 Sup. Ct. Rep. 281); *Caminetti* v. *United States,* 242 U. S. 470 (61 L. Ed. 442, 37 Sup. Ct. Rep. 192, Ann. Cas. 1917B, 1168, L. R. A. 1917F, 502); *Gordon* v. *United States,* 254 Fed. 53 (165

C. C. A. 463); *Austin* v. *United States,* 4 F. (2d) 774.
When he takes the stand in his own behalf, he does
so as any other witness, and within the limits of the
appropriate rules, he may be cross-examined as to
the facts in issue. *Reagan* v. *United States, supra,*
305; *Fitzpatrick* v. *United States, supra; Tucker* v.
*United States,* 5 F. (2d) 818. He may be examined
for the purpose of impeaching his credibility. *Reagan* v. *United States, supra,* 305; *Fitzpatrick* v.
*United States, supra,* 316. His failure to deny or
explain evidence of incriminating circumstances of
which he may have knowledge, may be the basis of
adverse inference, and the jury may be so instructed.
*Caminetti* v. *United States, supra.* His waiver is
not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing.''

9. We do not know from the bill to what extent the
the defendants, while testifying in their own behalf,
went in recounting the history of their lives and, like
any other witnesses, they are subject to cross-examination on those questions.

10. In the nineteenth assignment, it is indicated
that Johnson Smith, who was said to be a former
warden of the state penitentiary, was called as a
witness for the defendants. His examination as
quoted in the bill of exceptions reads:

"Q. Was Mr. Kelley, the defendant here, during
your incumbency, confined in the bull-pen?

"A. I believe he was.

"Q. Did you have occasion to notice any effect that
this confinement may have had upon his mentality,
before and after?

"A. Upon Kelley?

"Q. Yes.

"A. No, I think he was in the bull-pen only a few
days when I was there, a very short period.

"Q. Was that long enough in order for you to determine whether there was any change in him?

"A. No, not in Kelley's case.''

Counsel for defense then made an offer in writing as to the purpose of his question propounded to the witness, as follows:

"The purpose of the interrogatory of Mr. Johnson Smith, formerly warden of Oregon State Penitentiary, is to show that he, by experience and observation, had an opportunity to observe the change and effect of confinement in the bull pen in the Oregon State Prison, had upon the mentality of inmates confined in what is known as the bull pen and dungeon of said prison, that any confinement in excess of a few days was noticeable upon the mind and actions of those so confined, and to state actions disclosing an unfavorable change in the mental action and action of the mind to a material extent upon the individuals so confined especially when for periods of more than a week to ten days."

The witness had disclaimed any knowledge respecting the defendant Kelley on the subject involved in the examination. The offer to prove was not responsive to any interrogatory propounded to the witness. Moreover, that tender of testimony was not confined to either of the defendants on trial but took entirely too wide a range and is not shown by the bill to have been applicable to any state of facts in issue.

11. As stated, the defendants are both convicts imprisoned in the Oregon state penitentiary and it seems from the testimony that they had escaped from prison in other jurisdictions. The defendants claim that the sentence of death imposed upon them by the judgment of the court is forbidden by Section 1576, Or. L., reading thus:

"If the defendant is convicted of two or more crimes, before judgment on either, the judgment must be that the imprisonment upon any one may commence at the expiration of the imprisonment upon any other of such crimes; and if the defendant be in imprisonment upon a previous judgment on a conviction

for a crime, the judgment must be that the imprisonment must commence at the expiration of the term limited by such previous judgment.''

Their theory seems to be that owing to the fact that each of them being then under sentence to imprisonment for other offenses, the trial court had no jurisdiction to punish them for a crime committed while the pending imprisonment was in force. It will be noted that the section just quoted refers only to imprisonment and not to the penalty of death or fine. The section does not purport to exempt a defendant from trial and judgment for the commission of any crime during his confinement in the penitentiary. It would be shocking to all sense of justice and public security to say that a criminal confined in the penitentiary as punishment for his misdeeds could be licensed to commit other crimes with immunity; yet, that is the conclusion to which the argument of the defendants' counsel will lead. If the jury had found such a verdict as would authorize their imprisonment, the section quoted would be the authority for the court to declare that the latest imprisonment should begin at the expiration of the term then being served by the defendants. The punishment of death is an entirely distinctive thing and is not included in the provisions of this section.

12. According to the statements of the defendants as reported in the bill of exceptions, their confinement in the penitentiary became irksome to them. They complained of being incarcerated in solitary confinement and being fed but one meal a day, and the like. They contend that this had a tendency to impair their health and to render them apprehensive of death or great bodily harm. They argue that they were entitled to act as they did in self-defense. They asked the court to give the following instruction:

"I further instruct you, that under the State and Federal Constitution, cruel and unusual punishment shall not be inflicted, and that if you find under the evidence in this trial, that the same was inflicted upon the person of this defendant within a reasonable time prior to, and immediately before the alleged prison break, and that defendant was living in enforced fear and belief of unlimited repetition thereof, and that his escape was the only means of avoiding the same, you should find the defendant 'not guilty.' "

A similar instruction is found in Assignment Number Twenty-five. The defendants are not judges of the question of punishment. That is committed to the courts under the provisions of the statutes. Even if they had the right to escape that would not include the right to kill to effect their purpose. There is nothing to show that there was any imminent danger of death or great bodily harm to either of them in any situation arising without their fault.

13. It is said in 30 C. J., page 45:

"It is well established that one who is the aggressor or provokes the difficulty in which he kills his assailant cannot invoke the right of self-defense to justify or excuse the homicide, unless he in good faith withdraws from the combat in such a manner as to show his adversary his intention in good faith to desist. It is not enough to justify or excuse the homicide that in the course of the difficulty it became necessary for defendant to kill the deceased in order to save his own life or prevent great bodily harm; but he must also have been free from fault in provoking or continuing the difficulty which resulted in the killing. Accused cannot avail himself of, or shield himself on the ground of, a necessity which he has brought on by his own fault or wrongful act."

14. As to the imminence of danger, on page 57 of the same volume appears this language:

"In order to justify or excuse the taking of human life in self-defense the danger or peril of loss of life or the infliction of serious bodily harm must be, or appear to be, impending and imminent; the danger must be either actual, present, and urgent, or such as the slayer believes on reasonable grounds to be so urgent and pressing that it is necessary for him to kill in order to save himself from immediate death or great bodily harm. A mere fear or belief on the part of accused that he will suffer great bodily harm or loss of life in the future, as distinguished from the present, does not constitute a justification or excuse. Nor is a past danger sufficient."

The only imminent danger of death or great bodily harm to which the defendants were subjected at any time, as disclosed by the record, occurred during their escape from the prison when the guards were shooting at them to prevent their escape. This was a situation brought about by their own wrongdoing and furnishes no ground for any instruction on self-defense. Mere irksomeness or rigor of imprisonment will not justify convicts in killing their keepers. Self-defense cannot lawfully be predicated on such premises.

15. The defendants complain that the court was wrong in not giving a charge to the effect that the defendants were on trial charged with having killed John Sweeney and no one else. The bill of exceptions does not disclose but what this or a similar instruction was given. They also say that the court erred in not giving an instruction about viewing certain admissions and statements made by the defendants with caution.

It is said in Section 868, Or. L.:

"The jury, subject to the control of the court, in the cases specified in this Code, are the judges of the effect or value of evidence addressed to them, except

when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions, * *

"4. That the testimony of an accomplice ought to be viewed with distrust, and the oral admissions of a party with caution; * * "

In the absence of any showing to the contrary, we must presume that the court obeyed the law of this section.

16. In the twenty-seventh assignment the defendants complain about the court not giving the following direction to the jury:

"The right to qualify a verdict of murder in the first degree or guilty of murder in the first degree by adding the words 'we recommend life imprisonment' is thus conferred upon the jury in all cases of murder in the first degree. The law does not itself prescribe any rule defining or circumscribing the exercise of the right, but commits the whole matter of its exercise to the judgment and conscience of the jury. This being the law, you are not limited in your deliberations to the testimony adduced at the trial; nor is it dependent upon mitigating or palliating circumstances, you are accorded the privilege, under the law of making such recommendation for whatever reason your conscience may dictate; and if after taking into consideration the entire evidence, whether such evidence shall be sufficient in your judgment to establish the insanity defense relied upon beyond a reasonable doubt, or not, you are at liberty to take into consideration any or all evidence, if any, adduced for that purpose in determining whether in the exercise of your discretion or conscience with reference to such recommendation, you may return a verdict with recommendation for life sentence as I have stated, or disregard the same and return such verdict whether for or without a recommendation of life imprisonment. And in this connection, I instruct you, that as to how far considerations of age, sex, illness, if any, or mental impairment, if any, or in-

toxication, of whatever nature or kind, if any, or mental impairment, if any, or human passion, or weakness or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, all of which committed by the constitution of this state and legislative enactment based thereon to your sound discretion and to your sound discretion alone.''

Section 131, Or. L., prescribes the oath of a jury as follows:

''As soon as the number of the jury has been completed, an oath or affirmation shall be administered to the jurors, in substance that they and each of them will well and truly try the matter in issue between the plaintiff and defendant, and a true verdict give according to the law and evidence as given them on the trial.''

The request to instruct just quoted is faulty in that it invites the jury into the realm of speculation and imagination entirely outside the pale of the law and evidence. It is an invitation to violate their oaths to try the case according to the law and evidence and was properly rejected.

17. Finally, it is assigned as error that the indictment does not state facts sufficient to constitute a crime in this:

'' * * That John Sweeney died within a year and a day from the time the fatal shot was fired.''

As stated in the indictment, the defendants are thus charged:

''The said Tom Murray, Ellsworth Kelley and James Willos on the twelfth day of August, A. D. 1925, in the County of Marion and State of Oregon then and there being, did then and there unlawfully, feloniously, purposely and of deliberate and pre-

meditated malice kill one John Sweeney by shooting him, * * ."

If the defendants killed Sweeney on the day mentioned he must have died at that time. No man can be said to be killed unless he is dead. Moreover, the indictment substantially follows the form prescribed in the appendix to the Criminal Code. This has been uniformly held to be sufficient as to allegation: *State v. Weston,* 102 Or. 102 (201 Pac. 1083).

There is no error discernible in the record before us. The judgment of the Circuit Court is affirmed.

AFFIRMED.