15 P.3d 541 (2000)
331 Or. 384
STATE of Oregon, Petitioner on Review,
v.
Dariush David AMINI, Respondent on Review.
(CC 94-01-30513; CA A88710; SC S45699)
Supreme Court of Oregon.
Argued and Submitted November 10, 1999.
Decided December 14, 2000.
*542 Ann Kelley, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.
Louis R. Miles, Deputy Public Defender, Salem, argued the cause for respondent on review. With him on the brief was David E. Groom, State Public Defender.
Before CARSON, Chief Justice, and GILLETTE, Van HOOMISSEN, DURHAM, and LEESON Justices.[**]
LEESON, J.
The issue in this criminal proceeding is whether a jury instruction advising the jury of the consequences of a finding that defendant was guilty except for insanity violated defendant's right to trial by an impartial jury under Article I, section 11, of the Oregon Constitution. The Court of Appeals held that it did. State v. Amini, 154 Or.App. 589, 963 P.2d 65 (1998). For the reasons that follow, we reverse the decision of the Court of Appeals and remand the case to that court to consider defendant's other assignments of error.
Defendant was charged with two counts of aggravated murder, one count of attempted aggravated murder, and one count of second-degree assault with a firearm. Those charges stemmed from the deaths of defendant's wife and a foreign exchange student who resided with defendant's wife, and gunshot injuries to another student who was visiting at the residence. At trial, defendant raised the affirmative defense of mental disease or defect constituting insanity. ORS 161.295; ORS 161.305.[1] ORS 161.313 provides that, when the issue of insanity under ORS 161.295 is submitted to the jury for determination, "the court shall instruct the jury in accordance with ORS 161.327." ORS 161.327, in turn, lists the circumstances under which a defendant may be placed in the jurisdiction of the Psychiatric Security Review Board (PSRB) for care and treatment after a verdict of guilty except for insanity.
*543 At defendant's trial, the state asked the trial court to give Uniform Criminal Jury Instruction (UCrJI) 1122, which closely parallels the wording of ORS 161.327.[2] Defendant excepted, arguing that the mandate of ORS 161.313, combined with the jury instruction required by ORS 161.327, unconstitutionally suggested to the jury that it should and could consider the consequences of a guilty-except-for-insanity verdict in its deliberations. The trial court overruled defendant's objection and gave UCrJI 1122. The court also instructed the jury not to consider what sentence the court might impose if defendant were found guilty. The jury subsequently found defendant guilty.
On appeal, defendant argued that the trial court erred in giving UCrJI 1122. He contended that the instruction violated the guarantee of the right to trial by an impartial jury under Article I, section 11, because the instruction could induce the jury to believe that a finding of insanity would lead to defendant's release.
A majority of the Court of Appeals, sitting en banc, agreed. The majority believed that, in State ex rel. Ricco v. Biggs, 198 Or. 413, 255 P.2d 1055 (1953), this court had held that the right to trial by an impartial jury included the right to a trial that was evaluated for fairness under the same due process standards as those used to evaluate a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution. Amini, 154 Or.App. at 594, 963 P.2d 65.[3] *544 The majority concluded that the instruction was unfair, because
"the sentence that a defendant will receive if convicted, and the disposition that will be made of a defendant who is found to have a mental disorder, are not matters for the jury's consideration, and juries should not be instructed regarding them."
Id. at 595-96, 963 P.2d 65.
Judge Warren dissented. He maintained that defendant's appeal "raises no issue of jury impartiality pursuant to Article I, section 11," and that the only issue was whether giving UCrJI 1122 violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Amini, 154 Or.App. at 603, 963 P.2d 65 (Warren, J., dissenting). Judge Warren analyzed whether giving UCrJI 1122 deprived defendant of due process and concluded that the trial court's instruction that the jury was not to consider what sentence the court might impose if the jury found defendant guilty made it unlikely that the jury had applied UCrJI 1122 in a manner that was fundamentally unfair to defendant. He therefore would have affirmed the conviction. Id. at 620, 963 P.2d 65 (Warren, J., dissenting). This court allowed the state's petition for review.
Although defendant asserted, and the Court of Appeals agreed, that Article I, section 11, does not permit a jury instruction like UCrJI 1122, we initially must determine whether Article I, section 11, includes a broad fairness standard for reviewing such an instruction. We conclude that it does not.
In interpreting an original provision of the Oregon Constitution, such as Article I, section 11, this court considers the specific wording of the provision, the historical circumstances that led to its creation, and the case law surrounding it. Priest v. Pearce, 314 Or. 411, 415-16, 840 P.2d 65 (1992). The purpose of the inquiry is "to understand the wording in the light of the way that wording would have been understood and used by those who created the provision." Vannatta v. Keisling, 324 Or. 514, 530, 931 P.2d 770 (1997). This court also seeks to "apply faithfully the principles embodied in the Oregon Constitution to modern circumstances as those circumstances arise." State v. Rogers, 330 Or. 282, 297, 4 P.3d 1261 (2000).
The part of Article I, section 11, that is relevant to this case provides that, "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *." The clause guarantees only a trial by an impartial jury; it does not mention a fair trial. The broader context of Article I, section 11, provides no insight into whether the guarantee of trial by an impartial jury means a "fair and impartial trial."
We turn to the historical circumstances that led to the inclusion of the guarantee of trial by an impartial jury in the Oregon Constitution. The framers of the Oregon Constitution adopted Article I, section 11, verbatim from Article I, section 13, of the Indiana Constitution of 1851. W.C. Palmer, The Sources of the Oregon Constitution, 5 Or L Rev 200, 201 (1926). They did so without any record of debate. SeeCharles Henry Carey, ed., The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857, 310 (1926) (demonstrating absence of debate). However, such a guarantee was a feature of all state constitutions, beginning with the Virginia Declaration of Rights of 1776. See Article 8, Virginia Declaration of Rights ("That in all * * * criminal prosecutions a man hath a right * * * to a speedy trial by an impartial jury * * * "), quoted in 1 Bernard Schwartz, The Bill of Rights: A Documentary History 235 (1971).
Impartiality had not always been the norm. Before the fifteenth century, witnesses and persons who had participated in the indictment of an accused person were allowed to sit on the jury. Theodore F.T. Plucknett, A Concise History of the Common Law, 124-29 (5th ed 1956). By the mid-fifteenth century, however, the jury had evolved into "a body of impartial men who come into court with an open mind." Id. at 129. By the seventeenth century, it was well *545 established that a juror must have "such freedom of mind that he stands indifferent as he stands unsworne." 1 Edward Coke, Institutes of the Laws of England; or a Commentary Upon Littleton, § 155(a) (Butler ed; 19th ed 1853); see also id. at § 155(b) (a juror "ought to be least suspitious, that is, to be indifferent as he stands unsworne"). "The jurors must be free and lawful, impartial and disinterested, neither the enemies nor the too close friends of either litigant." 2 Frederick Pollock & Frederic W. Maitland, The History of English Law, 621 (2d ed 1968).
Blackstone, writing in the eighteenth century, observed that the jury system worked to prevent the partiality that might occur if a single judge rendered judgment in a criminal prosecution. He explained that, when the duty of finding facts is
"intrusted to any single magistrate, partiality and injustice have an ample field to range in; either by boldly asserting that to be proved which is not so, or by more artfully suppressing some circumstances, stretching and warping others, and distinguishing away the remainder. Here, therefore, a competent number of sensible and upright jurymen; chosen by lot from among those of the middle rank, will be found the best investigators of truth, and the surest guardians of public justice. For the most powerful individual in the state will be cautious of committing any flagrant invasion of another's right, when he knows that the fact of his oppression must be examined and decided by twelve indifferent men[.]"
3 William Blackstone, Commentaries on the Laws of England 379-80 (Cooley 4th ed 1899).
The foregoing history of trial by jury reveals that, by the eighteenth century, the requirement of an impartial jury reflected several related concerns, including that jurors be honest, that they not be interested in the outcome of the case, and that they be free from influence by the parties, particularly by the state. The guarantee of trial by an impartial jury thus appears to have been intended to prevent an individual who already has formed an opinion or is interested in the outcome of the case from sitting as a juror. We conclude that the guarantee of trial by an "impartial jury" means trial by a jury that is not biased in favor of or against either party, but is influenced in making its decision only by evidence produced at trial and legal standards provided by the trial court.
Consistent with the foregoing history, this court's cases reveal two broad purposes of the guarantee of trial by an impartial jury. The first purpose is to prevent an individual from serving on a jury who is biased or interested in the outcome of the proceedings. See, e.g., State v. Nefstad, 309 Or. 523, 527, 789 P.2d 1326 (1990) (trial court properly excluded "for cause" prospective juror who expressed biases that "substantially would impair his ability to try the issues in the case impartially and to follow the law"). The second purpose is to establish the right to a change of venue if pretrial publicity prevents an impartial jury from being drawn from the citizens of the county in which the crime was committed. See, e.g., Ricco, 198 Or. at 433, 255 P.2d 1055 (under Article I, section 11, accused person "entitled to move for and obtain a change of venue whenever it appears to the satisfaction of the court that a fair and impartial trial cannot be had in the county where the crime was committed").
It is true that, in a few cases in which parties have challenged either the impartiality of particular members of a venire, or the appropriate venue in light of pretrial publicity, this court has used the phrases "fair and impartial jury" or "fair and impartial trial." The court's use of the word "fair" in those situations was merely as a synonym for a jury that was not biased or prejudiced, not a holding that Article I, section 11, guarantees that every aspect of the trial will be fair. In State v. Rogers, 313 Or. 356, 367, 836 P.2d 1308 (1992), for example, the defendant contended that he had not been tried by an impartial jury as guaranteed by Article I, section 11, because some of the jurors had been aware of his previous conviction for aggravated murder. This court rejected the argument, holding that, "because defendant has not asserted that any of the three jurors was actually biased or incapable of being an *546 impartial juror, there can be no successful contention that defendant's state or federal constitutional rights to a fair and impartial jury were violated." Id. at 372, 836 P.2d 1308 (emphasis omitted). Similarly, this court has used the word "fair" in referring to the right to be tried by a jury that is impartial because it is free from the influence of prejudicial pretrial publicity. See, e.g., State v. Pratt, 316 Or. 561, 570, 853 P.2d 827 (1993) (rejecting argument that "it was impossible for [defendant] to obtain a fair and impartial trial in that county").
In summary, our review of this court's cases reveals that, when this court has held that a jury trial must be fair and impartial, it has meant that the jury must not be prejudiced or biased. The word "fair" has been used as a synonym for impartial, not to expand the guarantee of trial by an impartial jury into an unqualified guarantee of a fair trial.
The state asks us to hold that the guarantee of trial by an impartial jury under Article I, section 11, controls only the composition of the jury panel at the time that it is impaneled. Once a jury is selected, the state contends, the constitutional guarantee of trial by an impartial jury has no further effect. We disagree. It is true that the task of selecting an impartial jury takes place before the jury is sworn. Nonetheless, this court has recognized that it is possible that a juror, who had been impartial at the outset, might be subjected to improper influences or might act during trial in a manner that would compromise his or her impartiality. If that were to occur, an accused would be deprived of the guarantee of trial by an impartial jury under Article I, section 11. The guarantee of trial by an impartial jury therefore is the source of law for assessing alleged juror impartiality throughout the course of a criminal jury trial. See Pratt, 316 Or. at 575, 853 P.2d 827 (trial court did not abuse discretion in denying motion for mistrial after alternate juror made statements to bailiff during trial).
As noted, the Court of Appeals believed that this court's decision in Ricco stood for the proposition that the guarantee of trial by an impartial jury includes the right to a trial that is equivalent to a "fair trial" under the Sixth and Fourteenth Amendments to the federal constitution. For the reasons that follow, we conclude that the Court of Appeals was mistaken.
In Ricco, a mandamus proceeding, the issue was whether the trial court had erred in failing to rule on the relator's motion for a change of venue. The relator had argued that adverse pretrial publicity in the underlying misdemeanor proceeding made it impossible for her to receive a trial by an impartial jury in that county. Ricco, 198 Or. at 418, 255 P.2d 1055. The trial court had refused to rule on the motion, believing that it lacked jurisdiction to change the venue when the charge was only a misdemeanor. Id.
This court disagreed. It held that the relator was entitled to a writ of mandamus directing the trial court to rule on her motion, because Article I, section 11, guarantees all persons who are accused of a crime, be it a felony or a misdemeanor, the same rights to a fair and impartial trial under Article I, section 11. Id. at 433, 255 P.2d 1055. The court reiterated that the guarantee to trial by an impartial jury in Article I, section 11, encompasses the right to a fair trial, which is one that occurs in a community that is not biased and prejudiced against the accused. Id. at 429, 255 P.2d 1055.
The Ricco court did not use the term "fair trial" in the expansive manner urged by defendant and assumed by the Court of Appeals. Rather, the Ricco court emphasized that a fair and impartial trial is one in which
"the legal rights of such accused person are safeguarded, protected and respected; that is, a trial on the facts, in accordance with the law and the evidence * * * before an unbiased tribunal * * * free from harmful error, and from any extraneous influence that might be to his prejudice."
Id. at 429, 255 P.2d 1055 (quoting 23 CJS 274, Criminal Law, § 961) (emphasis omitted). That explanation of the guarantee of Article I, section 11, is consistent with the court's earlier observation in State v. Leland, 190 Or. 598, 608, 227 P.2d 785 (1951), that the term "fair trial" means "a trial before an impartial judge, an honest jury, and in an *547 atmosphere of judicial calm." (Internal quotation marks and citations omitted.)
The significance of Ricco for purposes of construing the guarantee of trial by an impartial jury under Article I, section 11, is its holding that the guarantee applies to misdemeanor as well as felony trials. 198 Or. at 430, 255 P.2d 1055. Ricco did not expand on this court's previous holdings that the right to trial by an impartial jury means trial by a jury that is not biased or prejudiced against the accused. Id. at 429, 255 P.2d 1055. Indeed, the Ricco court itself noted that "fairness" under the Fourteenth Amendment is a broader concept, that is, one that requires a fair and impartial trial or hearing according to the due and orderly course of the law. Id. at 431-32, 255 P.2d 1055.
The Court of Appeals majority erred in reading Ricco as having committed this court to an interpretation of Article I, section 11, that is synonymous with the fairness standards embodied in the Sixth and Fourteenth Amendments to the federal constitution. The guarantee of the right to trial by an impartial jury encompasses trial in a venue that is not biased or prejudiced against the defendant, not a trial that is fair in all respects.
The foregoing discussion demonstrates that defendant was not denied his right to a trial by an impartial jury under Article I, section 11, when the trial court, in response to defendant's affirmative defense of mental disease or defect constituting insanity, gave UCrJI 1122, outlining the circumstances under which a criminal defendant may be placed under the jurisdiction of PSRB. That instruction had no tendency to deny defendant a trial by a jury that is free of preconceptions about defendant's guilt, that is not subject to improper outside influences, and that evaluates the evidence that is introduced at trial based on the jury instructions that the trial court provides.
Although defendant's trial was not constitutionally infirm under Article I, section 11, of the Oregon Constitution, that holding does not end the matter. As noted, defendant's argument is that UCrJI 1122 deprived him of his right to a fair trial. The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a fair trial. Accordingly, we remand the case to the Court of Appeals to consider defendant's challenge to UCrJI 1122 under the Sixth and Fourteenth Amendments.
The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.
DURHAM, J., filed a concurring opinion.
DURHAM, J., concurring.
I concur in the majority's analysis of Article I, section 11, of the Oregon Constitution. I write separately to explain why I join in the court's decision to remand the case to the Court of Appeals for further consideration.
The Court of Appeals' majority decided that the confusion engendered by the trial court's conflicting instructions about the consequences of a verdict of guilty except for insanity deprived defendant of a fair trial under Article I, section 11. As a result, the Court of Appeals' majority had no reason to decide whether the court's instructions also deprived defendant of his fair trial and due process rights under the Sixth and Fourteenth Amendments to the United States Constitution. State v. Amini, 154 Or.App. 589, 594-95, 963 P.2d 65 (1998).
The dissenting opinion in the Court of Appeals assumed that a defendant has a fundamental due process right that requires that the court not permit a jury to consider the consequences of a verdict of guilty except for insanity in deciding guilt or innocence. State v. Amini, 154 Or.App. at 605, 963 P.2d 65 (Warren, J., dissenting). Given that assumption, the dissent focused on whether there was any reasonable likelihood that the jury in this case actually had interpreted the trial court's instructions in a manner that violated the asserted due process right, and concluded that no such reasonable likelihood existed. For that conclusion, the dissent relied in part on the trial court's jury instruction that the jury should "not consider what sentence might be imposed by the Court if this defendant is found guilty," and in part on the judicial assumption that juries *548 follow the court's instructions. Id. at 607, 963 P.2d 65.
If the legal analysis offered by the Court of Appeals' dissent were correct, then this court's proper disposition simply would be to reverse the decision of the Court of Appeals. A remand would be unnecessary if the record affirmatively demonstrated that the jury only learned about, but probably did not consider the consequences of a verdict of guilty except for insanity when it decided defendant's guilt or innocence. In my view, however, the record does not support that analysis.
The trial court's instruction about the consequences of a verdict of guilty except for insanity began with the following statement: "If the defendant is found guilty except for insanity, the defendant is subject to the following dispositions: * * *." The parties appear to agree that the court's instruction under ORS 161.313 accurately described the dispositions that apply to a person found guilty except for insanity under ORS 161.327. Despite the specificity of the court's instruction under ORS 161.313, the court's other instruction, quoted above, that directed the jury not to consider the potential sentence that the court would impose after a verdict of guilty, might have eliminated any reasonable likelihood that the jury nevertheless did consider the potential sentence in its deliberations. But the record contains other information that bears on that issue.
After delivering the instructions discussed above, the trial court made the following additional statement to the jury:
"We went through this to check for mistakes and already there is one. Where I said do not consider what sentence might be imposed by the Court if the defendant is found guilty, that's only partially true. The Aggravated Murder charge isif there is a guilty finding, you're the one that makes the decision on those."
That statement qualified the earlier instruction that the jury should not consider the consequences of a verdict of guilty except for insanity. The court's statement informed the jury that the court's earlier admonition about not considering the potential sentence did not apply to the charge of aggravated murder.
The combination of the instruction under ORS 161.313, the admonition not to consider the consequences of a guilty verdict, and the qualifying statement quoted above created a reasonable likelihood that the jury took into account the potential sentence when it considered the charge of aggravated murder. Defendant argued, both at trial and in the Court of Appeals, that that combination of instructions deprived him of a fair trial. Defendant thus raises a colorable argument that the trial court's instructions violated his rights under the Sixth and Fourteenth Amendments. The record in this case requires a remand to allow the Court of Appeals to address defendant's federal claims.
I concur.
NOTES
[**] Kulongoski and Riggs, JJ., did not participate in the consideration or decision of this case.
[1] ORS 161.295 provides:

"(1) A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.
"(2) As used in chapter 743, Oregon Laws 1971, the terms `mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."
ORS 161.305 provides:
"Mental disease or defect constituting insanity under ORS 161.295 is an affirmative defense."
[2] UCrJI 1122 provides:

"If the defendant is found guilty except for insanity, the defendant is subject to the following dispositions:
"(1) By the court.
"(a) If the court determines that the defendant is presently affected by a mental disease or defect and presents a substantial danger to others requiring commitment to a state mental hospital, the court will order the defendant placed under the jurisdiction of the Psychiatric Security Review Board, and order the defendant committed to a state mental hospital pending further disposition by the Psychiatric Security Review Board.
"(b) If the court finds that the defendant is affected by mental disease or defect but either that it is in remission or that the defendant is not presently a substantial danger to others requiring commitment to a state mental hospital, the court will order the defendant placed under the jurisdiction of the Psychiatric Security Review Board and may order that the defendant be conditionally released. A defendant who is conditionally released is subject to such supervisory orders of the court as are in the best interests of justice, the protection of society, and the welfare of the defendant.
"(2) By the Psychiatric Security Review Board. The Psychiatric Security Review Board is a state agency that by statute has as its primary concern the protection of society. After the court places the defendant under the jurisdiction of the Psychiatric Security Review Board, the board will have jurisdiction over the defendant for a length of time equal to the maximum period of incarceration to which the defendant could have been sentenced had the defendant been found guilty of the charged crime.
"(a) If the board determines that the defendant continues to be affected by a mental disease or defect and presents a substantial danger to others and is not a proper subject for conditional release, the board will order the defendant committed to a state mental hospital for custody, care, and treatment.
"(b) The Psychiatric Security Review Board will order that the defendant be discharged from its jurisdiction if at its first hearing or at some later date the board determines that either
"(i) the defendant is no longer affected by mental disease or defect, or
"(ii) the defendant is still affected by mental disease or defect but no longer presents a substantial danger to others.
"(c) If the board, either at its first hearing or at some later date, determines that the defendant is still affected by a mental disease or defect and is a substantial danger to others, but can be controlled adequately if conditionally released with treatment as a condition of release, the board will order the defendant to be conditionally released. A defendant who is conditionally released is subject to such supervisory orders of the board as are in the best interest of justice, the protection of society, and the welfare of the person.
"A person is considered to have a mental disease or defect requiring supervision even when that disease or defect is in a state of remission when the disease may, with reasonable medical probability, occasionally become active and render the person a danger to others."
[3] The majority also appears to have relied, in part, on State v. Daley, 54 Or. 514, 522-23, 103 P. 502, on reh'g 54 Or. 514, 104 P. 1 (1909), which held that a trial court did not err in refusing to give a defendant's requested instruction that would have stated the consequences of a finding of insanity. Daley raised issues under Article I, section 16, of the Oregon Constitution, which provides, in part, that, in criminal cases, "the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law[.]" Daley did not address impartial jury issues under Article I, section 11.