NIMROD O'KELLY, Plaintiff in Error, *v.* TERRITORY OF OREGON, Defendant in Error.

### *Error to Benton.*

1. The Legislative Assembly may authorize a district judge to appoint a time for holding a special term of the District Court.
2. Error will not be presumed in the acts and decisions of a District Court; it must affirmatively appear from the record.

NIMROD O'KELLY was indicted, tried, convicted of the crime of murder and sentenced to be hung, at a special term of the District Court in Benton County, holden on the 29th day of June, 1852. He sued out a writ of error and supersedeas; and now comes with the record in the case, alleging various errors in the proceedings and judgment of the court below.

*J. K. Kelly*, counsel for plaintiff in error.

*R. P. Boise*, for defendant in error.

WILLIAMS, C. J. Error is assigned, in the first place, because the special term was unauthorized by law, and, in support thereof, it is argued as follows: The organic act pro-

vides that the District Court shall be held " at such times and places as may be prescribed by law;" but plaintiff in error was tried at a term of the District Court, held at a time appointed by the judge; therefore, the proceedings are void.

The premises are correct; but the conclusion does not follow. The act of Assembly (*Gen. Laws*, p. 100) requires any one of the district judges to hold a special term, &c.; and the said district judge is authorized to appoint a day, &c. When, therefore, a district judge, pursuant to the power conferred upon him by this act, appoints a day for a special term of the District Court, such day is a time "prescribed by law," or legal authority.

The act of the judge is made law by the law-making power. If time, fixed by legislative enactments for holding a special term of the District Court, is time "prescribed by law," then time fixed by a district judge for such purpose is time "prescribed by law;" for the latter, by the expressed will of the former, is invested with all power over time in that matter, when circumstances arise evoking the exercise of such power. To fix a time for holding a District Court, it is said, is an act of legislation, and no judicial officer, or other person, can be empowered by the legislative assembly to do such an act; for, *delegatus non potest delegare*. Delegated power, as a general rule, cannot be re-delegated; but the Legislature of Oregon do not exercise delegated power. Their right is not derived from Congressional acts or conventional charters, but from the people, and is, therefore, an original and inherent right to make all laws that the legislature of any sovereignty can make, not inconsistent with the Constitution and laws of the United States. The people of Oregon, then, can accommodate themselves as to the times and places of holding courts, as they see proper, unless prohibited by some competent authority. The only pretence of prohibition is found in the requirement of the organic act, which says, that District Courts "shall be held at the times and places prescribed by law." Admitting, for the sake of

O'Kelly *v.* Territory.

argument, that a time appointed by a judge, under the act in question, is not " time prescribed by law," in the sense of the organic act, then it does not follow that such appointment is prohibited, and, therefore, void.   When the organic act declares that the District Courts shall be held " at times and places prescribed by law," it describes a duty of the judiciary, not the limits of legislative power.   The judges are required to hold courts " at times and places prescribed by law," so that regular terms may be secured to the people; but no power is taken from the Assembly to provide for special terms, nor are the judges forbidden to hold other than the regular terms, if litigants in person, or the people in due form, consent to such other and special terms.

To say that a judge cannot appoint a time for holding a court, is to strip him of all judicial functions, except at the regular and stated terms of his court.   How can a judge provide for hearing applications for, or motions upon, writs of injunction, attachment, *ne exeat, habeas corpus,* &c., if he has no power to say when such applications or motions shall be heard ?   Should the legislature, without specifying time, impose upon a judge the duty of hearing and determining a case, the devolution of such duty would carry with it the right of saying when the proceedings should take place; so that, in one view of the subject, the appointment of a time is as much an incident of judicial authority as an emanation of legislative power.

Special terms of the District Court are proper ; for while they prevent trouble and expense to the public, they save the prisoner from punishment without conviction, and thus motives of humanity and expediency harmonize with those principles of law upon which such terms are clearly sustainable.   (*Harriman* v. *The State,* 2 *Green,* 270.)

Error is assigned, in the second place, because the judge did not give the prisoner ten days' notice of the court, as required by statute.

The force of this assignment is hardly perceived, for while it asserts that the prisoner did not have ten days' notice, the

record says that the court was holden on the 29th day of June, 1852, "after more than ten days' notice to Nimrod O'Kelly." Weight ought not to be attached to this statement in the transcript, it is said, because it is the clerk's recital of what transpired out of court. No part of this record can be discarded as the private production of the clerk, for it was made under the direction of, and approved by, the judgment of the court, and is the written uncontradictable evidence of what such court said and did in this case; and proves, if it proves any thing at all, that the court found the fact to be, that more than ten days' notice of the term had been given to the plaintiff in error. Again, no objection was made to a trial in the court below by the prisoner for want of notice; therefore, it must be presumed, as the jurisdiction of the court is not concerned, that the notice was given according to law. (*Friar* v. *The State*, 3 *How. Miss.* 422.)

But it is further argued for this assignment of error, that it is an assignment for error in fact; that the plea of *in nullo est erratum* admits the truth of the allegation as to want of notice. "If an error of fact that is not assignable be assigned, and *in nullo est erratum* be pleaded, it is no confession; as if it be assigned that such a day there was no common pleas sitting, because that is against the record; so, if a man says that he did not appear, and the record says he did, *in nullo est erratum* is no confession, but a demurrer, because it is against the record." (*Cro. Car.* 12, 29, 52; *Yelverton*, 58; 1 *Vent.* 252; 3 *Keb.* 229; 1 *Lev.* 76.)

Error is assigned, in the third place, because the indictment does not charge plaintiff in error with "feloniously killing," &c. Our statute declares, that "if any person shall purposely, and of deliberate and premeditated malice, kill," &c., "such person shall be deemed guilty of murder." The indictment charges that "Nimrod O'Kelly purposely, and of deliberate and premeditated malice, did kill," &c. The words of the statute are transferred to the indictment, and if they describe murder in the one place, they of course describe it in the other. Murder, by the common law, was the

O'Kelly *v.* Territory.

" felonious killing," &c., therefore the necessity in charging the crime to say, " did feloniously kill ;" but murder in this territory is a statutory offence, and the indictment is sufficient if it follow the statute. ( *U. S.* v. *Lancaster,* 2 *McLean,* 431 ; *State* v. *Neal,* 2 *Black.* 548 ; *Chambers* v. *People,* 4 *Scam.* 351.) " Nothing need be stated in the body of an indictment, which is not required to be proved upon the trial, in support of the charge." (*Sec.* 48, *chap.* 4, *Criminal Proceedings.*) Certainly, nothing more need be proved than is stated in this indictment.

Error is assigned, in the fourth place, because the county commissioners did not select the juries. Section 2 of the act regulating the mode of selecting jurors, (*Gen. Laws, p.* 161,) provides that at least thirty days previous to the sitting of the court, the commissioners shall select twenty-three good and lawful men, &c., and deliver a list to the clerk, who shall thereupon issue a venire to the sheriff, directing him to summon the persons so selected. Section 2 of the act relative to special terms, provides that the clerk shall issue a venire requiring the sheriff to summon at least twenty-four competent persons, &c. Manifestly a difference is made by these statutes, for in the one case the jurors are to be selected by the county commissioners, at least thirty days before the term of court at which they are to serve, while, in the other case, not more than ten days need elapse between the appointment of the term and the day on which it commences. The sheriff, in the one case, is directed to summon twenty-three persons "selected ;" in the other, he is to summon twenty-four competent jurors, &c. The common law mode of selecting jurors is prescribed for special terms, and a statutory mode for regular terms. The jurors were rightly summoned in this case.

Error is assigned, in the fifth place, because the court did not comply with the following section of the statute : " It shall be the duty of the District Court to cause each member of the grand jury to be sworn and examined as to his qualifications to serve as a juror." (*Sec.* 5, *chap.* 3, *Criminal Pro-*

*ceedings.*) Twenty-four "good and lawful men," as it appears, were "empanneled and sworn," so that the court in some way determined that the grand jurors were "good and lawful men," or, in other words, men duly qualified to act as grand jurors; and this decision, like all others, we must suppose was made upon sufficient and legal evidence, until the contrary appears. The contrary does not appear; therefore, we conclude that the jury was legally empanneled. (*Commonwealth* v. *Parker*, 2 *Dick.* 549.)

Error is assigned, in the sixth place, because the journal entries do not show that any indictment was found against plaintiff in error. This assignment is true in point of fact; but avails nothing, for such entry is not required by law, where the accused was in custody, as in this case. The indictment, the statute says, "shall be filed and remain as a public record." The indictment, therefore, by filing, becomes accessible to all persons concerned, and proves, *per se*, by whom it was found, against whom and for what crime, in as full and public a manner as the minutes of the court could be made to prove such facts. No entries, descriptive of the indictment, can be necessary, unless a part is better than the whole, or a copy is more certain than the original. The record is, in this respect, perfect.

Error is assigned, in the seventh place, because the petit jury was not regularly empanneled. The record shows that "the defendant, having been brought into court, thereupon came, as a jury," &c. Certain persons, it seems, "came as a jury," but objection is made, because it does not appear that they were drawn and called according to law. Nothing need be more certain in legal procedure than that these persons, when they "came as a jury," did not come as volunteers to try the cause, but as they were called; and surely no one will pretend that the minutes of the court must show that the clerk wrote their names on slips of paper, put them into a box, and thus go into all the details of drawing a jury. This objection was not made at the time the jury was empanneled, and cannot therefore be now entertained. Chief-Justice Black,

of Pennsylvania, in the late case of *Jewell* v. *The Common-wealth*, says : It would be a very great public misfortune if a person, charged with a public offence, could sit by while he was tried by a jury, to whom he makes no objection, and after a verdict against him on the merits of his cause, set it aside, on account of accidental and unavoidable irregularities in the summoning or calling of the jurors, by which he was not prejudiced.

Error is assigned, in the eighth place, because the verdict was not rendered in open court. Relative to this point it appears, by the record, that " the jury, after a short absence, returned into court the following verdict," &c. Strictly speaking, to return a thing means to serve, or carry it back; but the expression here used is common in legal phraseology, and its meaning cannot be mistaken ; for where it is said that a jury have returned their verdict, it is understood that they have brought their decision into court, because no other mode of returning a verdict is known to our laws or practice. Possibly the verdict was returned in the absence of the jury, as has been suggested ; but the record does not show, or even make it probable that such was the case ; and bare possibility is far from proof of error.

Error is assigned, in the ninth place, because the prisoner was not present when the verdict was rendered. Doubtless it was error in the court below to receive the verdict in the absence of the plaintiff in error, if such was the fact. The prisoner was placed at the bar, the witnesses testified, the arguments were made, and the instructions given, and the jury retired, and, " after a short absence, returned their verdict," all of which took place at the same meeting, or sitting of the court ; so that the inference, in fact, is strong, that the prisoner having been brought into court, remained there until the verdict was delivered, or that meeting of the court was ended. The presumption does not arise, as contended, that when the jury took the case, the prisoner was remanded to jail, for the directions of the court as to that matter would be as the circumstances of the particular case might require.

The plaintiff here charges error upon the court below, which is denied by the prosecution. No record or other evidence is adduced in support of such charge; but we are called upon to presume error, simply because it is alleged, contrary to the well-known rule, that plaintiffs in all courts, and in all cases, must prove their claims and charges, or be defeated. Wrongs are never presumed against private persons, much less should violations of law be presumed against a court in discharge of a solemn and sworn duty. But the error, it is said, lies in the defects of the record, not in the state of the facts. This position is untenable. The Supreme Court of Illinois, in *McKinney* v. *The People*, 2 *Gilman*, 540, says: " In a criminal case, after the caption, stating the time and place of holding the court, the record should consist of the indictment, properly endorsed, as found by the grand jury, arraignment of the accused, his plea, the empanneling of the traverse jury, their verdict, and the judgment of the court; this is all, in general, that the record need state." The Supreme Court of Iowa, in *Harriman* v. *The State*, 2 *Green.* 270, referring to the above decision, say: "This we consider a safe rule, comprehending all that is necessary to be enrolled, as constituting the record proper in the case." Upon exceptions the rule is the same in criminal as in civil cases. (*Slater* v. *The People*, 2 *Comstock*, 193; *Wiley* v. *The People*, 3 *Hill*, 194.) The case of *Dunn* v. *The Commonwealth*, 6 *Barr's Rep.*, seems to conflict with the above authorities in some respects, but it is adapted to the peculiar practice in Pennsylvania, requiring great strictness in the record; for prisoners are there not allowed to except to any of the opinions or acts of the court before which they are tried.

Prisoners in our courts are provided with counsel; confronted with the witnesses against them; allowed to except to all the court says or does upon trial; and it is no hardship to say that, if they have any objection to the acts of the tribunal before which they are tried, they shall make these objections known to such tribunal, or forever after hold their peace.

Time was when the unfortunate accused was dragged to trial without counsel, or a fair chance for self-defence; then other rules prevailed, and courts tried to make technicalities the means of justice; but, when prisoners come before our courts with more privileges and presumptions in his favor than he otherwise could have, these olden rules cease with the reasons on which they rested, and criminals cannot be allowed to take refuge from the judgments of our liberal laws in the cobwebs of an antiquated practice. The awful import of these views to the plaintiff in error is not forgotten; but criminal laws were made to prevent crime, and their firm enforcement by courts is a duty as plain as it is painful. Executive clemency may be interposed in one case and withheld in another, as a matter of discretion, but this decision must be followed hereafter; and if judicial compassion now bends the laws to suit a seemingly hard case, a door may be opened through which the midnight assassin and mercenary murderer may escape from the punishment due to their crimes.

Judgment affirmed.

OLNEY, J., having been of counsel, did not sit in this cause.