## OHAMA v. STATE.

(No. 879; Decided December 23rd, 1916; 161 Pac. 558.)

APPEAL AND ERROR—CRIMINAL LAW—OBJECTIONS AND EXCEPTIONS BELOW—REVIEW OF ERRORS ON APPEAL IN THE ABSENCE OF EXCEPTIONS.

1. Where, in a capital case, the evidence is conflicting on whether defendant left the room after the beginning of the quarrel and then returned and renewed the quarrel, and the court erroneously instructs that an intent to kill at the instant the shot was fired· was sufficient to constitute premeditated malice, and it is impossible to ascertain whether the jury believed that defendant left the room and returned, or based the verdict upon the theory of the erroneous instruction, as to what constituted premeditated malice and thereby rendered the act murder in the first degree, the judgment should be reversed, though defendant's counsel neglected to object and save an exception to the instruction.

ERROR to District Court, Lincoln County; HON. DAVID H. CRAIG, Judge.

T. Ohama was convicted of murder in the first degree and brings error. The material facts are stated in the opinion.

*McMicken & Blydenburgh,* for plaintiff in error.

It is true that no exceptions were taken by counsel for defendant at the trial and it would appear from the rules that

have been observed in this and other appellate courts, that there is nothing before the court for review. Present counsel for defendant had nothing to do with the trial; defendant was convicted, sentenced and is now awaiting execution; the record discloses that by reason of the neglect or ignorance of counsel to appear for plaintiff in error, he was deprived of a fair trial; the shirt worn by the defendant at the time of the killing was cut with a knife, but the shirt was not produced in evidence. He testified that deceased assaulted him with a knife and that he shot in self-defense. Cases have been reversed where it was shown that the incompetency of counsel prevented a fair trial. (12 Cyc. 708; Fambles v. State (Ga.), 25 S. E. 365; State v. Benge (Ia), 61 Ia. 658, 17 N. W. 100; State v. Williams (Del.), 18 Atl. 949.) The court erred in giving instruction No. 6 which contained an incorrect definition of premeditated malice. (State v. Phillips, 118 Ia. 660, 92 N. W. 876; People v. Malone, 91 N. Y. 211; People v. Decker, 157 N. Y. 186, 51 N. E. 1018; Leighton v. People, 88 N. Y. 117; People v. Beckwith, 103 N. Y. 361, 8 N. E. 662; People v. Conroy, 97 N. Y. 62; People v. Hawkins, 109 N. Y. 408, 17 N. E. 371; People v. Johnson, 139 N. Y. 358, 34 N. E. 920; People v. Constantino, 153 N. Y. 24, 47 N. E. 37; Ross v. State, 8 Wyo. 384; Fahnestock v. State, 23 Ind. 262.) Instruction No. 14 was erroneous in that it was an incorrect statement of the law of justifiable homicide. (State v. Yokum, 11 S. D. 544, 79 N. W. 835; McLellan v. State, 140 Ala. 99, 37 So. 239; Stewart v. State, 137 Ala. 33, 34 So. 818; Mathews v. State, 136 Ala. 47, 33 So. 838; People v. Dollor, 89 Calif. 513, 26 Pac. 1086; People v. Bruggy, 26 Pac. 756; Ballard v. State, 31 Flor. 266, 12 So. 865; Sylvester v. State, 35 So. 142; Stevens v. State, 118 Ga. 762, 45 S. E. 619; Strickland v. State, 98 Ga. 284, 25 S. E. 908; Anderson v. State, 117 Ga. 255; 21 Cyc. 1057; 21 Cyc. 1057, Note 2, citing Kennedy v. State, 140 Ala. 1, 37 So. 90; Stoball v. State, 116 Ala. 454, 23 So. 162; Morgan v. Territory, 64 Pac. 421; Lee v. State, 81 S. W. 385; People v. Glover, 141 Cala. 233, 74 Pac. 745; People v. Yokum, 118

Cal. 437, 50 Pac. 686. Nilan v. People (Colo.), 60 Pac.
485; Palmer v. State, 9 Wyo. 40; State v. Singleton (Kan.)
74 Pac. 243.) The final paragraph of instruction No. 9 as
applied to premeditated malice seems to us erroneous; in-
struction No. 13 is erroneous in that it did not give defend-
ant the benefit of the rule of self-defense, which applies
where there is an honest belief of danger. None of the
above instructions were excepted to, but the failure to do so
was gross negligence on the part of counsel and the death
penalty should not be imposed because of such negligence.
The judge who tried the case was not physically competent
at the time it was tried; the trial as appears from the record
was a mere travesty on justice and the judgment should be
reversed.

D. A. Preston, Attorney General, for the State.

The evidence showed premeditated malice; no affidavits
were filed showing newly discovered evidence; incompe-
tence in counsel in the trial of a criminal case has never been
advanced in this state as a ground for reversing a judgment;
alleged errors not properly called to the attention of the
trial court by motion for a new trial will not be considered
in this court. It is not the duty of the appellate court to go
outside of the record and search for errors; that accused
was deprived of a fair trial is alleged for the first time in
this court. The shirt worn by accused at the time of the
killing did not show any evidence of having been cut in any
manner; there were two eye witnesses to the tragedy, and
the testimony of each was the same. They testified that de-
ceased did not have a knife or pistol, or any weapon at the
time of the killing. The record presents a case of deliberate,
vindictive murder; it is clear that a new trial would not
change the verdict, and the judgment should be affirmed.

POTTER, CHIEF JUSTICE.

The plaintiff in error was charged with the crime of mur-
der in the first degree and convicted of that crime by an
unqualified verdict and sentenced to suffer death. The
case is here on error and is in somewhat the same condi-

tion as the Parker and Cirej cases this day decided. It was tried at the same term of court, and the same instructions were given as in those cases defining premeditated malice and explaining the right of the jury to qualify its verdict, if murder in the first degree, by adding thereto, "without capital punishment." No exception was taken to either instruction, or to any other, and they were not mentioned in any way in the motion for new trial. The plaintiff in error, hereinafter referred to as the defendant, is represented here by different counsel than at the trial in the district court and they did not come into the case until after the motion for new trial had been filed and overruled.

It appears that the defendant was arraigned on May 4, 1915, and having informed the court that he was without and unable to secure counsel the court appointed counsel to defend him. And thereupon, he entered a plea of not guilty, the journal entry reciting that he waived his right to the statutory time in which to plead. And the case was set down to be tried at ten o'clock on the following morning. It appears that the trial was commenced on the morning of May 5th and was concluded on that day by the rendition of the verdict finding the defendant guilty of murder in the first degree. No objections appear to have been made or exceptions taken during the trial.

Because of the failure of counsel appointed by the court to apply for time in which to prepare for trial and interpose objections and preserve exceptions so as to entitle the defendant to be heard in this court upon alleged manifest errors under the ordinary rules of appellate procedure, it is contended that the defendant did not have a fair trial, and that the errors are so serious and prejudicial as to justify a reversal of the judgment in the absence of exceptions. And it is argued that the record clearly shows such incompetence or gross neglect of counsel prejudicial to defendant as to furnish sufficient ground for a new trial. Whether the mere neglect or incompetence of assigned counsel, appearing to have prejudiced defendant's rights,

would justify a reversal need not be determined.  But the fact that defendant's counsel was appointed by the court, and that the trial was allowed, without objection, to proceed without reasonable time for preparation, if such be the case, might be proper to be considered in connection with a showing by the record that no objection was made or exception taken to erroneous and clearly prejudicial instructions defining the crime of which this defendant was convicted, or relating to the right of the jury to qualify their verdict by adding "without capital punishment," in determining whether the failure to so object or except has deprived the defendant of the right to have the errors considered in this court or make such consideration improper.

As explained in the Parker case, the instruction defining premeditated malice, the element distinguishing murder in the first degree from second degree murder was radically and fundamentally erroneous.  And in this case, as in that, it was clearly prejudicial, for, while the defense was self-defense, the jury, if disbelieving that the act was committed in self-defense, might have found upon the evidence, if properly instructed, that there was not such premeditation as to constitute murder in the first degree.  The deceased, Sadagi Muragishi, was shot by the defendant with a pistol or revolver, and expired within a few minutes after the shooting.  There were only two eye-witnesses to the homicide besides the defendant, and they testified on the trial as well as the defendant; the testimony of the three being taken through an interpreter.  The defendant testified in his own behalf and the others as witnesses for the State.  From the testimony of the two who testified for the State it appears that the shooting occurred during a scuffle or fight following or as a continuation of a quarrel between the deceased and the defendant, and, as one of said witnesses states, when each of them had his arm around the other. They all agree that the deceased had been chiding the defendant for drinking and playing pool instead of attending to his work as he should or making preparation for his work on the following day, and applied an epithet to the defend-

ant, the meaning of which we do not understand, nor is it explained in the evidence, except that the defendant referred to it as a bad nickname and he didn't want it because he had just come to the camp (a coal mining camp in which the homicide occurred). The two witnesses aforesaid for the State testified that after the beginning of the quarrel the defendant went out of the room and returned in four or five minutes, when the quarrel was again started by his referring to what the deceased had said, and that after a few words they commenced to fight. The defendant testified that the deceased came toward him with a knife and that he shot to defend himself. But the other witnesses testified that they did not see him have any knife and that no knife was found about him after he was shot. The defendant also testified that he did not leave the room, but, in effect, that the quarrel was continuous, and that he had the revolver on his person in a pocket all the time.

If the defendant left the room after the beginning of the quarrel and then returned and renewed the quarrel, that fact might tend to show premeditated malice. But it is impossible to ascertain whether the jury believed that the defendant left the room and returned, or based the verdict upon the theory of the erroneous instruction that an intent to kill at the instant the shot was fired would be sufficient to constitute premeditated malice and thereby render the act murder in the first degree, or upon what theory or belief as to the facts the verdict was based. This being a capital case we think, for the reasons stated in the Parker case with reference to the instructions aforesaid, the rule as to objections and exceptions should not be strictly enforced. The rule of practice is a salutary one in most cases and should not be departed from even in criminal cases except in a case like this, where deemed necessary to the security of the defendant's right to a fair trial or the just administration of the law. The reasons for the rule are not of such paramount importance as to outweigh all considerations of justice where manifestly prejudicial er-

rors involving the life of the accused have occurred, and may have caused a verdict requiring the extreme penalty of the law to be imposed. (State v. Wright, 104 La. 44, 28 South. 909; Schlenker v. State, 9 Neb. 300, 2 N. W. 710.) In the Nebraska case cited it was held that the absence of an exception in a capital case does not necessarily deprive the prisoner of his right to a new trial for errors prejudicial to him; and the error considered was in defining premediated malice, as in this case. The court said that the instruction completely ignored premeditation as an independent element of murder in the first degree, and left the jury to understand that a deliberate intention unlawfully to kill was alone sufficient evidence of premeditated malice, and would warrant a conviction for the highest degree of homicide.

In at least one state there is a statutory recognition of the impropriety of requiring an exception to authorize, in a capital case, the consideration of prejudicial errors to see if justice requires the ordering of a new trial. (People v. Lyons, 110 N. Y. 618, 17 N. E. 391; People v. Pallister, 138 N. Y. 601, 33 N. E. 741.).

We think it not only proper but our duty to order a reversal of the judgment and that the cause be remanded for a new trial, and it will be so ordered.     *Reversed.*

BEARD, J., concurs.

SCOTT, J., did not sit.